ALBERT J. BARNES, Appellant, *v.* THE LONG ISLAND REAL ESTATE EXCHANGE AND INVESTMENT COMPANY, Respondent, Impleaded with THE PEOPLE's TRUST COMPANY, Respondent, Appellant.

*Assignment of a mortgage — the record of the assignment is not notice thereof to the mortgagor — what is notice thereof — the fact that the mortgagee is not in possession of the bond and mortgage is not notice — principle that where one of two innocent persons must suffer from the acts of a third, etc., applied.*

A mortgagor, even after the recording of an assignment of the mortgage, is protected in making payments to the mortgagee until he receives notice of the assignment or of facts sufficient to put him on inquiry as to the continuance of the mortgagee's title. If he receives notice of facts which would enable him, if he made the requisite inquiry, to ascertain the truth, then he is bound to make such inquiry, and if he omits to do so, he is chargeable with bad faith and is not protected in thereafter making payments to the mortgagee.

In the absence of such notice, the fact that the mortgage was not in the possession of the mortgagee at the time when the payments were made, does not affect the validity of the payments.

In the present case it appeared that on September 6, 1892, the plaintiff purchased a number of lots of the defendant investment company, giving in part payment therefor a first and a second mortgage; that on September 7, 1892, the defendant investment company assigned the second mortgage to the defendant trust company, and that on September 10, 1892, the deed, the two mortgages and the assignment of the second mortgage were recorded.

November 1, 1892, the plaintiff paid off the first mortgage which had been retained by the investment company and obtained a satisfaction piece thereof. The plaintiff continued to make payments upon the second mortgage at the

office of the investment company until, at the end of five years, he had paid the entire amount thereof. He received receipts signed by the secretary and cashier of the investment company for the payments so made, but was not given a satisfaction piece of the mortgage, nor did he receive back such bond and mortgage.

All the payments made by the plaintiff upon the first and second mortgages were made to the secretary and cashier of the investment company, who concededly had authority to accept payments made on account of the bond and mortgage held by the investment company. It was subsequently discovered that such secretary and cashier was a defaulter and that he did not turn over to the defendant trust company the payments made on the second mortgage.

The only testimony tending to show that the plaintiff had notice of the assignment of the mortgage or of facts tending to place him upon inquiry was that the president of the investment company told the plaintiff at a dinner that the investment company assigned its mortgages.

*Held*, that the statement of the president of the investment company was insufficient to put the plaintiff upon inquiry as to the ownership of the second mortgage and that the investment company owed the plaintiff the duty of discharging the second mortgage;

That the investment company having placed it in the power of its secretary and cashier to mislead the plaintiff the case was an appropriate one for the application of the rule that where one of two innocent persons must suffer from the act of a third person he should sustain the loss who has enabled the third person to do the injury.

APPEAL by the plaintiff, Albert J. Barnes, from a judgment of the Supreme Court in favor of the defendant, The Long Island Real Estate Exchange and Investment Company, and partly in favor of the defendant, The People's Trust Company, entered in the office of the clerk of the county of Kings on the 5th day of March, 1903, upon the decision of the court, rendered after a trial at the Kings County Special Term, dismissing the plaintiff's complaint upon the merits as to The Long Island Real Estate Exchange and Investment Company and not upon the merits as to The People's Trust Company.

Also an appeal by the defendant, The People's Trust Company, from the said judgment, except so much thereof as adjudges that the defendant, The People's Trust Company, recover a certain sum from the plaintiff.

*L. E. Warren*, for the appellant.

*George W. Wingate*, for the respondent and appellant.

*Robert H. Wilson*, for the respondent.

WOODWARD, J. :

The plaintiff in this action purchased certain real estate, consisting of six lots at Ridgewood Heights, on the 6th day of September, 1892, from the Long Island Real Estate Exchange and Investment Company, the price agreed upon being $4,400.  The plaintiff was a steward employed upon the " American Line " of steamers plying between the United States and England, and the officers of the investment company were Ignatz Martin, president ; Sydney H. Carr, secretary ; Meyer Hellman, treasurer ; this office it appears being largely nominal, and C. K. Hoorning, a director, who in the absence of the president and secretary acted for the company, he being the chairman of the finance committee.  These were the financial officers of the company, and in the transaction out of which this controversy arises the plaintiff had his dealings with Mr. Carr, the secretary, to whom he paid $500 down, giving two purchase-money mortgages, one of $1,300 and the other for $2,600, taking a receipt for the money, signed by the investment company by Carr as its secretary.  This transaction is conceded to have been within the scope of Mr. Carr's authority as secretary and cashier of the investment company.  On the following day, September 7, 1892, the investment company assigned the second mortgage for $2,600 to the defendant, the People's Trust Company, and on the tenth of September of the same year Barnes' deed and mortgages and this assignment were all recorded in Queens county.  Barnes paid off the first mortgage, which had been retained by the investment company, on the 1st day of November, 1892, and the bond bears a memorandum acknowledging the receipt in full of the amount due, signed by the investment company, " Sydney H. Carr, Sec'y," the same being in the handwriting of Mr. Carr.  On the 29th day of November, 1892, the investment company executed a satisfaction piece discharging the first mortgage of record.  Mr. Barnes for a period of nearly five years continued to make payments of interest and principal at the office of the investment company upon the second mortgage, with no intimation at any of such payments that the investment company was not the owner of the said second mortgage.  He took receipts, written upon the blanks of the investment company, signed by Mr. Carr, or in his behalf, as secretary of the company, and, finally, on the 28th day of September, 1897, the

transaction came to an end by the payment of $500, with accrued interest and satisfaction fees, this being the amount remaining unpaid. At this time Mr. Carr wrote out and signed with the stamp of the investment company the following receipt:

"IGNATZ MARTIN, *Pres.*                SYDNEY H. CARR, *Sec'y.*

" THE LONG ISLAND REAL ESTATE EXCHANGE & INVESTMENT CO.
" Telephone Call 47 Bushwick.
    " 1155 Myrtle Avenue, near Broadway.
                    " BROOKLYN, N. Y.                    189

" Received from Mr. Albert Barnes the sum of Five Hundred Dollars, being the balance due on his mortgage to us on lots in Ridgewood Heights ; also interest to Oct. 1st and satisfaction fees.

" BROOKLYN, N. Y. *Sept.* 28, 1897.

" L. I. REAL ESTATE EXCHANGE & INVESTMENT CO.
                        " SYDNEY H. CARR,
                            " *Sec'y.*"

Mr. Barnes was not given a satisfaction piece in this transaction, nor did he receive back the bond and mortgage; but this is not material to any question here presented, for there is no dispute that he has paid over the money, the only question being whether he has paid the same to the investment company, or whether the payments made to Mr. Carr, who is a defaulter, and whose present whereabouts is unknown, were made to him as the agent of the defendant, the People's Trust Company. The action was brought upon the theory that the plaintiff, having paid his money to the investment company, without notice of the assignment to the trust company, the former owed him the duty of discharging the second mortgage, and this theory is, no doubt, correct, if the plaintiff in fact had no notice which was intended to put him on inquiry. The learned court at Special Term has, however, found as a fact that the plaintiff had such notice, and it is also found, though the plaintiff declined to ask for an amendment to conform to such finding, that Mr. Carr received the money as the general agent of the trust company, and the complaint was dismissed upon the merits as to the investment company, and not upon the merits as to the trust company. The plaintiff appeals from the judgment of dismissal, and

the defendant trust company appeals from so much of the judgment and decision as determines that it has received the amount of the mortgage through its general agent.

Under the provisions of the statutes of this State (1 R. S. 763, § 41; Real Property Law [Laws of 1896, chap. 547], § 271) the mere recording of an assignment of a mortgage is not to be deemed, in itself, notice of such assignment to a mortgagor, his heirs or personal representatives, so as to invalidate any payment made by them, or either of them, to the mortgagee ( *Van Keuren* v. *Corkins,* 66 N. Y. 77, 80 ; *Brewster* v. *Carnes,* 103 id. 556, 561), nor is the fact that the bond and mortgage were not in the possession of the investment company controlling, the latter having been the mortgagee. ( *Van Keuren* v. *Corkins, supra,* 80, 81.) The only evidence of any notice to the plaintiff from the investment company is the testimony of Mr. Martin, president of the corporation, that a few weeks subsequent to the original purchase by Mr. Barnes the latter invited the officers of the investment company, with others, to a dinner on board the ship of which he was the acting steward, and that while at this dinner the question came up about the real estate, and Mr. Barnes is said to have made an inquiry whether, if he should need more time, he would be able to secure an extension. To this it is alleged that Mr. Martin replied that they had assigned the mortgage to the People's Trust Company ; that it was a corporation, and that so long as the interest was paid there need be no fear about the mortgage being called in. It is claimed that the plaintiff replied that he knew the investment company people and would rather deal with them, and that Carr, who was in the presence of Mr. Martin and the plaintiff, replied : "That is all right, Mr. Barnes, you can go right on dealing with me. I am going to collect the interest for the People's Trust Company." This conversation, which is denied by the plaintiff, is alleged to have taken place just after the first payment of $500 and the giving of the two mortgages, and the direct examination does not show that any particular mortgage was under discussion, or that anything was said to indicate to the plaintiff that one of the mortgages had been retained by the investment company, while the other had been assigned. Upon cross-examination Mr. Martin says: "He spoke about the mortgages ; it will just fill the gap if he pays off part, and part on

to it, and he wanted to know after the mortgage was due whether it could remain if he had not it all paid off or some words to that effect; I told him we assigned our mortgages to the People's Trust Company, or we have assigned the mortgage to the People's Trust Company." Asked "which did you say, that you did assign, or that you had assigned," the witness answered : " I would not be so very precise about that, but I did say to him that we assigned, or will assign, or did assign our mortgages." That is, in a general conversation, if such conversation ever took place, the president of the investment company told the plaintiff that they assigned their mortgages to the People's Trust Company ; not that any particular mortgage had been assigned, and Mr. Carr, secretary of the investment company, told the plaintiff that he could continue to do business with him, etc., thus giving the plaintiff to understand that there would be no change in their relations, and the president appears to have acquiesced in this. Subsequently the plaintiff paid off his first mortgage to the investment company ; paid this money to Mr. Carr, the secretary; although from the evidence he had just as much reason to believe this mortgage had been assigned as the second one, and he continued to make payments both of principal and of interest to Mr. Carr, with the knowledge of the other officers of the investment company, with no suggestion of any kind that he was not paying an indebtedness due to the latter. This is supported by the receipts given as secretary of the investment company, and particularly the last one given in 1897, where it is declared that the $500 payment is "balance due on his mortgage to us," etc. In view of the vague and uncertain character of the alleged notice, which nowhere discloses any information in reference to this particular mortgage, and the consistent attitude of the plaintiff, who insists that he never heard of the People's Trust Company until after the disappearance of Mr. Carr, when the trust company made a demand upon him for interest upon the second mortgage, coupled with the fact that the plaintiff paid to the investment company, subsequent to this alleged notice, one of the mortgages, at which time there was no suggestion of any change in relations, we are unable to discover evidence to warrant the conclusion that he had any notice that either of his mortgages had in fact been assigned, or that he had such information as was intended to put him on inquiry. A mere general statement that the invest-

ment company assigned its mortgages — and the evidence really goes no further — is not notice to the plaintiff that one of his mortgages had been assigned, and when he was permitted to make payments discharging the first mortgage, which, so far as the evidence goes, was upon the same footing as the second, we are unable to discover evidence sufficient to support the conclusion that he acted in bad faith in the matter, or that he did otherwise than as a reasonably prudent man might have done under the same circumstances. It is unquestionably the rule that a mortgagor may continue to deal with a mortgagee in making payments until he has received notice of the assignment of the mortgage or notice of facts sufficient to put him on inquiry as to the continuance of the mortgagee's title. When he has received notice of such facts, then it becomes a question of good faith. If he has received notice of facts which would enable him, if he made the requisite inquiry, to ascertain the truth, then he is bound to make such inquiry, and if he omits to do so he is chargeable with bad faith, and is not protected in thereafter making payments to the mortgagee. (*Stoddard* v. *Gailor*, 90 N. Y. 575, 579, and authorities there cited.) But a mere general statement of the policy of the investment company, made informally at a dinner, did not give notice to the plaintiff that this particular mortgage had been assigned, nor place upon him the duty of making special inquiry, in view of the fact that the investment company did retain one of the mortgages, accepted its payment and issued a discharge regular in all of its details, the transaction taking place with the same officer who had conducted all of the other negotiations. There was nothing in the transaction between the plaintiff and the investment company, reaching over a period of nearly five years, which would justify him in believing that there was any change in their relations; certainly not more than that the investment company was acting as agent for the trust company, and the plaintiff's attitude upon the trial, insisting, through his counsel and in his evidence, that the case proceed upon the theory adopted in the complaint, is persuasive evidence that he acted in good faith in paying the money to the original mortgagee, and that he had no suspicion that he was doing anything different. The plaintiff testifies that he never heard of this trust company until after Carr's disappearance, some four or five years after his last payment on the second mort-

gage, and his entire conduct is consistent with his testimony. He was engaged in traveling the ocean ; he was in this country only at intervals, and he made his payments to the only people with whom he had had any dealings in reference to this mortgage; he made his payments to the people to whom he gave the mortgage, at their office and with the knowledge of all of its financial officers, and the only pretense of any notice to him is the testimony of the president, some ten years after an alleged conversation at a dinner, in which it does not appear that anything was said about this particular mortgage, and the plaintiff denies having had any such conversation. It is conceded that the money was received and receipted for by Mr. Carr as secretary, and we do not see how the investment company can avoid responsibility for the acts of persons who are held out as acting for it in the receipt of moneys under the circumstances of this case.

There was some testimony to the effect that the trust company had sent a notice to an address in Brooklyn, supposed to have been the address of the plaintiff, informing him of the assignment, but the witness was wholly unable to say whether such a notice had been sent out to the plaintiff, and it does not appear that the address was the legal address of the plaintiff, but of a friend of his, and there is no evidence that any such notice ever reached the plaintiff. The learned court does not appear to have regarded this evidence as of importance, and the witness was only able to testify to a general impression that all of the names on the list of mortgages assigned by the investment company to the trust company were notified of the change of ownership. When asked if the notices were inclosed in stamped envelopes, he was only able to say that they were passed through the usual channels, and, in view of the conduct and the testimony of the plaintiff, it is hardly possible to sustain a finding of notice upon this testimony.

Reaching the conclusion, as we do, that the evidence of notice to the plaintiff is not sufficient to justify the finding, and believing that in equity and justice the investment company, which, upon its own evidence, stood by and watched this plaintiff pay over his money upon mortgages which had been given to it, and which it at least assumed to represent, should be called upon to discharge this mortgage, we conclude that the judgment should be reversed.

Whatever relations Mr. Carr may have borne to the trust company, they were unknown to the plaintiff, who knew Mr. Carr only as the secretary of the investment company, and if the latter permitted its officer to use its corporate name and its position as mortgagee for the purpose of taking the plaintiff's money, it ought, in equity and good conscience, to answer for the money thus received in its name. This would seem to be an appropriate place for the application of the rule that where one of two innocent persons must suffer from the act of a third person, he should sustain the loss who has enabled the third person to do the injury. ( *Walsh* v. *Hartford Fire Ins. Co.*, 73 N. Y. 5, 10.) The investment company placed it in the power of Mr. Carr, its secretary, to mislead the plaintiff, and to induce in him the belief that he could safely discharge the obligation which he had issued to that corporation. The authority of an agent is not only that conferred upon him by his commission, but also as to third persons that which he is held out as possessing. ( *Walsh* v. *Hartford Fire Ins. Co., supra.*) There can be no doubt that the investment company held out Mr. Carr as its financial officer and secretary, and when it made an assignment of the second mortgage it was bound in good faith to call the plaintiff's attention to the specific fact, not to tell him generally of a custom to assign mortgages, followed by conduct which was not calculated to impress him with the idea that there had been a change in relations. It is evident that Mr. Martin did not intend the conversation alleged as a notice; it was a mere afterthought by way of defense after the wrong had been consummated, and it ought not to be allowed to prevail in a court of equity.

The judgment appealed from should be reversed, costs to abide the final award of costs.

GOODRICH, P. J., BARTLETT, HIRSCHBERG and JENKS, JJ., concurred.

Judgment reversed and new trial granted, costs to abide the final award of costs.